Martha O. STEPHENSON, Plaintiff,

v.

William E. SIMON, Defendant.

Civ. A. No. 75–1694.

United States District Court,
District of Columbia.

March 31, 1978.

Michael E. Goldman, Washington, D.C., for plaintiff.

Earl J. Silbert, U.S. Atty., Robert N. Ford, Stephen S. Cowen, Asst. U.S. Attys., Washington, D.C., for defendants.

## MEMORANDUM

CHARLES R. RICHEY, District Judge.

This case, brought pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. §§ 2000e *et seq.*, came before the Court in the Fall of 1976 on cross-motions for summary judgment. In a Memorandum Opinion and Order of November 12, 1976, 427 F.Supp. 467 (D.D.C. 1976), the Court concluded that plaintiff was entitled as a matter of law to back pay and retroactive promotion to GS–12 status as of September 30, 1973, and the Court therefore granted plaintiff's motion for summary judgment. Defendant filed a notice of appeal, but subsequently sought and was granted leave to dismiss the appeal. Defendant then provided plaintiff with the relief ordered by the Court. This case is now before the Court on plaintiff's motion of December 20, 1977, for attorneys' fees pursuant to 42 U.S.C. § 2000e–5(k).

The instant motion requires the Court to resolve but a single issue. Defendant does not, nor could he in good faith, dispute that plaintiff is a "prevailing party" within the meaning of section 2000e–5(k) in that she obtained substantially all the relief she sought. Defendant also does not challenge the reasonableness or the appropri-

ateness of the 58.75 hours [1] expended by plaintiff's counsel in litigating this case to a successful conclusion. Defendant's *sole* opposition to plaintiff's motion for fees is to the hourly rate ($60) sought by plaintiff. Defendant contends that because Mr. Goldman is a salaried employee of the National Treasury Employees Union (NTEU), of which plaintiff is a member, counsel should be compensated only at "the contractual rate of salaried compensation between the union and its attorneys." For the following reasons, the Court finds defendant's position to be contrary to the fundamental purposes of section 2000e-5(k).

The Court has not found any cases directly on point with the instant case. Numerous cases, however, have considered the appropriateness of compensation to counsel employed by public interest and legal aid organizations in civil rights enforcement actions, *see, e. g., Rodriguez v. Taylor,* 569 F.2d 1231 (3d Cir. 1977); *Torres v. Sachs,* 538 F.2d 10 (2d Cir. 1976); *Hoitt v. Vitek,* 495 F.2d 219 (1st Cir. 1974); *Rios v. Enterprise Ass'n Steamfitters Local 638,* 400 F.Supp. 993 (S.D.N.Y.1975), and the Court finds their reasoning apposite to the instant situation. As the Third Circuit stated in *Rodriguez v. Taylor:*

> The award of fees to legal aid offices and other groups furnishing *pro bono publico* representation promotes the enforcement of the underlying [civil rights] statutes as much as an award to privately retained counsel. Legal services organizations often must ration their limited financial and manpower resources. Allowing them to recover fees enhances their capabilities to assist in the enforcement of congressionally favored individual rights. Moreover, assessing fees against defendants in all circumstances may deter wrongdoing in the first place.

569 F.2d at 1245. An award of fees to counsel employed by NTEU effectuates these very same policies: First, NTEU also has limited financial and manpower re-

sources, and civil rights attorneys' fees awards will enable NTEU to participate more actively in civil rights enforcement actions. Second, the assessment of fees against the defendant herein will also serve to deter future Title VII violations.

In holding that attorneys' fees awards to counsel employed by legal aid and public interest organizations effectuate the purposes of the civil rights acts, the aforecited cases, and others, have considered the relevant criteria for determining an appropriate hourly rate for such counsel. In many of these cases, defendants have attempted, as defendant does here, to persuade the court that such attorneys should be recompensed at a substantially lower rate than private firm attorneys. Most recent cases, however, have rejected this approach.

The prevailing view was articulated by the Second Circuit in *Torres v. Sachs,* 538 F.2d 10, 13–14 (1976):

> We agree with the courts which have held that the "allowable fees and expenses may not be reduced because [the prevailing party's] attorney was employed . . . by a civil rights organization . . . or because the attorney does not exact a fee." *Fairley v. Patterson,* 493 F.2d 598, 606 (5th Cir. 1974); *Tillman v. Wheaton-Haven Recreation Ass'n,* [517 F.2d 1141 (4th Cir. 1975)]
>
> . . . .
>
> Application of the [Act's attorneys' fees] provision to furnish *full* recompense for the value of services in successful litigation helps assure the continued availability of the services . . . .
>
> In short, imposition of *full* attorneys' fees is a useful and needed tool of the court to fully protect plaintiffs' rights.

(Emphasis added). *See Rios v. Enterprise Ass'n Steamfitters Local 638,* 400 F.Supp. at 997; Berger, *Court Awarded Attorneys' Fees: What Is "Reasonable"?,* 126 U.Pa.L. Rev. 281, 322–23 (1977). In its recent *Rodriguez* opinion, the Third Circuit, in reviewing an attorneys' fees award to attor-

---

1. Counsel's affidavit contains itemization for 58.75 hours, though the total award sought by plaintiff is based on 68.75 hours. It appears that plaintiff's counsel miscalculated his claimed hours, and the Court will therefore base its award on the itemized 58.75 hours.

neys employed by the Community Legal Services, Inc. (CLS), rejected *both* defendant's general approach *and* the specific argument made by defendant herein—that the salary paid counsel by CLS was an appropriate basis for calculating attorneys' fees:

> While a CLS attorney's salary need not be ignored by the trial judge, neither should it serve as the polestar for fixing a reasonable hourly rate of compensation. Relative salaries within the legal services unit reflect relative expertise and responsibility and, therefore, provide an objective guide to setting *relative* hourly rates. Reference to absolute salary levels is about as reasonable as deriving the reasonable value of a federal judge's time from his or her salary. Thus, we hold that the district court misused its discretion by emphasizing the factor of absolute salaries paid by CLS in deriving an hourly rate of compensation. To the extent salary levels are relevant, the appropriate referent would be comparable salaries earned by private attorneys with similar experience and expertise in equivalent litigation.

569 F.2d at 1248. The Court finds these authorities and their analyses to be persuasive, and the Court will therefore consider the same criteria in determining a fair and appropriate hourly rate for Mr. Goldman in this case as it would if he were a private firm attorney.

■ The Court finds that counsel's work in this case has been excellent throughout the course of this litigation, and the quality of his summary judgment motion and supporting points and authorities enabled this Court to avoid a prolonged and unnecessary trial. While the issues decided by the Court were not exceptionally complex, nevertheless this suit was one of the first cases to require application of the standards articulated by the Court of Appeals for the District of Columbia Circuit in *Day v. Mathews,* 174 U.S.App.D.C. 231, 530 F.2d 1083 (1976). Mr. Goldman is quite experienced in employment-related matters in that he has been actively involved in such matters continuously since September 1971, first with the Department of Labor and subsequently with NTEU. He has also done graduate work and received an L.L.M. in labor law. Upon consideration of these factors, the Court concludes that $60/hour represents a fair and reasonable rate for Mr. Goldman's work during the course of this litigation, and is consonant with the prevailing rate in the community for attorneys of similar background and experience who are involved in similar types of cases.

As noted above, defendant does not challenge the reasonableness or the appropriateness of the 58.75 hours claimed by Mr. Goldman in this suit. The Court has reviewed counsel's affidavit and the entire record herein and concludes that the claimed hours are indeed reasonable and appropriate, and the Court therefore will compensate counsel for the full number of hours claimed. Accordingly, the Court will order defendants to pay to counsel for plaintiff herein the sum of $3,525.00, which represents 58.75 hours at $60/hour.

An order in accordance with the foregoing will be issued of even date herewith.